DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, A.B., a minor, appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, which adjudicated him delinquent under a charge of complicity to robbery. We affirm.
 I. {¶ 2} The Record Exchange is a commercial retail business that carries such items as records, cassettes, compact discs, video games, tee shirts and the like. A.B. and two friends, B.M. and L.Y., also minors, entered the Record Exchange to peruse the video games, though none of them had any money. A.B. and L.Y. asked a store employee to remove three videogames from the locked case, so that they could look at them. The employee handed L.Y. three games with an estimated value of $110. L.Y. said they wanted to buy the games and proceeded towards the cash register while the employee relocked the case.
 {¶ 3} Upon reaching the front of the store, L.Y. made a gesture and a statement to the other two boys and fled the store without paying for the games. The employee attempted to pursue L.Y., but A.B. and B.M. physically blocked the employee to ensure L.Y.'s escape. When A.B. and B.M. attempted to flee along with L.Y., the employee attempted to restrain A.B. and a struggle immediately ensued. The struggle continued until the exhausted employee could no longer hold A.B., during which time the two had wrestled on the floor knocking over CD's and racks. When A.B. arose from the scuffle, the manager confronted him. A.B. threw the manager aside, smashed the computer monitor off the countertop and toppled a rack of tee shirts. At this time, B.M. had reentered the store, picked up a stool, and brandished it at the other employees. Meanwhile, someone had prudently called the police.
 {¶ 4} A.B. and B.M. next fled to the Record Exchange's back room, and exited out the back door and into the parking lot. The police came upon the two as they were fleeing, and caught up with A.B. as he ran across a field. Eventually, the police followed B.M. to a hiding spot in a nearby apartment building. The police took the two to the Record Exchange, where an employee and a customer made a positive identification. The police contacted L.Y. at his home and he admitted that he stole the video games that the three had gone to the store with no money, and that he had made a statement to the other two while he was fleeing the store. Later, at trial, all the employees and the customer positively identified all three boys from the incident.
 {¶ 5} A.B. was charged with complicity to robbery, in violation of R.C. 2911.02(A)(2), a second degree felony. The case was tried before a magistrate who made findings, found him guilty, and adjudicated A.B. a delinquent child. A.B. opposed the magistrate's decision in written objections and at oral hearing, but the trial court adopted the decision and sentenced him accordingly. A.B. timely appealed, asserting a single assignment of error for review.
 II. Assignment of Error
"The finding that [a.b.] participated in a common plan to commit the offense of complicity to robbery is contrary to the manifest weight of the evidence and contrary to law."
 {¶ 6} A.B. alleges that the evidence produced at trial could not have persuaded a reasonable finder of fact that he was guilty of complicity. Thus, A.B. charges that the verdict was against the manifest weight of the evidence and should be reversed. We disagree.
 {¶ 7} Reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340. Accord State v. Thompkins (1997),78 Ohio St.3d 380, 387. Furthermore, upon presentation of conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
 {¶ 8} A.B. was adjudicated delinquent on the charge of complicity to robbery, in violation of R.C. 2911.02(A)(2): "No person, in attempting or committing a theft offense or in fleeing immediately after the theft offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Complicity is actionable as: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). Such complicity may be inferred from presence, companionship or conduct, before or after the offense is actually committed. State v. Pruett (1971), 28 Ohio App.2d 29, 34.
 {¶ 9} At trial, the magistrate heard testimony from nine witnesses. The State produced seven witnesses, including eyewitnesses, a police officer and a friend of the three boys. A.B. produced two witnesses: L.Y. and B.M., his codefendants. Upon acknowledging that such extensive testimony will inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. See State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} In presenting its case for complicity to robbery, the State presented a coherent version of the incident, culminating in the sound inference that A.B. and B.M., through physical force, aided and abetted L.Y. in his robbery of the games. Simply put, the three boys, without any money whatsoever, entered the store and asked to see the games, whereupon L.Y. fled with the games and signaled the other two to block the pursuit. What started as physical obstruction became an all out struggle, until eventually, the two boys were able to flee out the back. A.B. suggests that he did nothing to provoke the encounter, but rather was attacked by store personnel. This allegation is simply not credible, and is rebuked by the State's witnesses. A.B. also contends that he had no prior knowledge that L.Y. intended to steal the games. This contention is suspect in light of the fact that none of the boys had any money, yet A.B. accompanied L.Y. to the counter to ask the employee to remove the games from the locked cabinet. However, this issue is immaterial, in that the State was not seeking to prove a prior agreement, but merely complicity in the robbery. There is little doubt that A.B.'s actions, as described by the State's witnesses, aided and abetted L.Y. in his theft of the games. Furthermore, the testimony of A.B.'s witnesses, codefendants in his case, could be seen as self serving and lacking in credibility.
 {¶ 11} We conclude that the mere fact that the magistrate chose to disbelieve A.B.'s theory of the encounter, and instead chose to believe the State's version, is insufficient to find that the trier of fact lost its way or created a manifest miscarriage of justice. See Gilliam,
supra; Otten, 33 Ohio App.3d at 340; Thompkins, 78 Ohio St.3d at 387. We conclude that the adjudication of delinquency is not against the manifest weight of the evidence. This assignment of error is overruled.
 III. {¶ 12} A.B.'s assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Whitmore, J. Concur